Filed 8/17/21  P. v. Williams CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075436 |
| v. | (Super.Ct.No. RIF088153) |
| CURTIS JOHN WILLIAMS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.
Affirmed.

John E. Edwards, under appointment by the Court of Appeal, for Defendant and
Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity
Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

A jury convicted defendant and appellant Curtis John Williams of second degree murder and robbery. After the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), he filed a petition for resentencing under Penal Code[1] section 1170.95. A trial court found that he was not eligible for relief, based on the prosecutor's erroneous representation that he was the actual killer, and it summarily denied his petition. Defendant contends the denial order must be reversed because the court failed to follow the procedural steps required by section 1170.95 and violated his right to due process under California law. He further argues the order must be reversed because the prosecutor's statement that he was the actual killer amounted to prosecutorial misconduct, and defense counsel's agreement with that statement amounted to ineffective assistance of counsel. We conclude the trial court in denying the petition on the erroneous ground that defendant was the actual killer but that any error was harmless beyond a reasonable doubt. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

"On December 2, 1995, the victims, Vincent Anes and Sherry Magpali, went to a birthday party with Jose Menor and his brother Eugene. Anes was driving his car. After attending the birthday party for an hour, the group went to a bowling alley in Moreno

---

[1] All statutory references will be to the Penal Code unless otherwise noted.

[2] The factual background comes directly from our opinion affirming defendant's convictions in *People v. Williams* (Sept. 8, 2003, E031301) [nonpub. opn.]. On August 28, 2020, we granted defendant's request to take judicial notice of this opinion.

Valley.  After Anes and Magpali bowled for an hour, the group left and went to a fast food restaurant.  The group then went to a restaurant in Corona for dinner for about two hours.  Anes then dropped off the Menor brothers at their home at 12:45 a.m.

"Kenneth Riomales was a high school classmate of Anes and a friend of Anes and Magpali.  Between 1:00 and 2:00 a.m., he was driving in Moreno Valley with three friends when they saw Anes's car in a parking lot at a local park.  They went to a nearby golf course to look at the view and returned 20 to 30 minutes later.  They decided to surprise their friends and drove into the parking lot.

"When Riomales looked in the car, he saw a naked body in the back seat.  He and the others realized the person had been shot.  They drove to Anes's home to see if he was there, found he was absent and then called police.

"Anes had been shot eight times in the head, chest and left arm.  Deputies searching the park found Magpali's underwear and Anes's clothing in the park and in the victims' car.  Magpali was missing but her body was found before 7:00 a.m. on the side of the 215 freeway in the Sun City area.  She had been shot twice in the head.  The 10 shell casings collected from both crime scenes were manufactured by six different companies.

"On January 18, 1996, a Redlands police officer stopped a car for having a cracked windshield.  The car was eventually impounded and a gun was found under the front seat.  It was loaded with different colored bullets from different manufacturers.  The driver, Richard Simon, was arrested.  Subsequent testing established that the gun was the

3

gun which had been used to kill Anes and Magpali. The parties stipulated that DNA evidence established that Simon's DNA was found on Magpali's vagina and pants.

"On May 26, 1996, David Fernandez, a sheriff's deputy arrested Richard Simon for a homicide in Moreno Valley that had occurred the previous day. A gun was recovered along with three magazines that were loaded with different colored bullets from different manufacturers. The homicide occurred outside an apartment occupied by defendant Williams, and his car was in the parking lot. . . . The car was subsequently located and carpet and fiber samples were obtained from it. The fiber samples from the car were similar to the fibers found on Magpali's body.

"The prosecution also introduced a transcript of excerpts from two tape recordings of October 1999, jail conversations between Williams and his girlfriend. The recordings were made when the girlfriend visited Williams at the jail. In the first, Williams referred to 'them kids' and said: 'Tell you the truth I just snatched her out the car when he bugged her, threw her to the side of the road . . . .' In the second, Williams said: 'He [presumably Simon] was in the passenger seat too. He had her in the fro [*sic*] . . . in th [*sic*]. . . in this like all with her knees on the ground and her head in his lap. Something like that I don't really, I can't even remember everything.' "

A jury convicted defendant of the second degree murder of Anes (§ 187, subd. (a), count 1), the first degree murder of Magpali (§ 187, subd. (a), count 2)), and rape by force in concert with another (§§ 261, subd. (a)(2), 264.1, count 3). As to counts 1 and 2, the jury found true the allegation that a principal was armed with a firearm. (§ 12022,

4

subd. (a)(1).)  It also found true special circumstance allegations that the murder in count 2 was committed in the course of a kidnapping and rape.  (§ 190.2, subd. (a)(17).)  A trial court sentenced defendant to life without the possibility of parole on count 2, 15 years to life on count 1, and a consecutive two years on the firearm enhancements.  The court stayed the sentence on count 3 pursuant to section 654.

Defendant appealed, and this court affirmed the judgment.  (*People v. Williams*, *supra*, E031301.)

Defendant subsequently filed a petition for resentencing under section 1170.95, in propria persona, in the superior court as to the murder of Magpali.  The trial court denied the petition, and this court affirmed the denial in a recent opinion.  (*People v. Williams* (Oct. 8, 2020, E072975) [nonpub. opn.], review granted Dec. 16, 2020, S265368.)[3]

On December 12, 2019, defendant filed a second in propria persona petition under section 1170.95, regarding the murder of Anes.  He filed a preprinted form and only checked the box stating that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine, and he could not now be convicted of murder because of changes to section 188, effective

---

[3] The Supreme Court deferred any further action in this matter pending consideration and disposition of a related issue in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598, or pending further order of the court. We note that, during the pendency of this appeal, the Supreme Court issued *People v. Lewis* (July 26, 2021, S260598) __ Cal.5th __ [2021 Cal.LEXIS 5258] (*Lewis*).

January 1, 2019. He did not request the court to appoint counsel for him. The People apparently did not file a response.

The court set a status conference hearing for December 27, 2019. The hearing was continued to January 10, 2020 and again to March 13, 2020.

On January 14, 2020, the Riverside County Public Defender filed a notice of declaration of conflict of interest, stating that the Law Offices of the Public Defender was appointed to represent defendant in his section 1170.95 petition. However, the public defender declared a conflict of interest as to defendant in this matter.

On March 13, 2020, the court held a status conference. The court relieved the public defender and appointed conflict defense lawyers to represent defendant. The court then set a status conference for May 22, 2020. The status conference was continued again to July 10, 2020.

At the status conference hearing on July 10, 2020, the prosecutor made an oral motion to dismiss the petition. He stated that, "[a]ccording to the 2003 appellate opinion in imaging, it shows [defendant] is the actual killer in both murders." Defense counsel stated that he looked at the opinion, and he "[did not] disagree with [the prosecutor] on the facts." He then objected for the record. The court summarily denied the petition.

Defendant filed a timely notice of appeal.

DISCUSSION

## The Court's Summary Denial of Defendant's Petition Was Improper; However, Any Error Was Harmless

Defendant contends the court erred in summarily denying his section 1170.95 petition for resentencing since it failed to follow the procedural requirements mandated by section 1170.95 and thereby violated his right to due process. He further argues that the prosecutor committed misconduct by misrepresenting to the court that the 2003 appellate opinion showed he was the actual killer, and that his counsel rendered ineffective assistance by agreeing with the prosecutor that the opinion showed him to be the actual killer. We conclude that the court erred in denying the motion on the erroneous ground that defendant was the actual killer but that any error was harmless beyond a reasonable doubt.

A. *Senate Bill 1437*

The California Supreme Court recently provided the following explanation of Senate Bill No. 1437 and summary of procedures for seeking relief under section 1170.95:

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1,

7

subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.  [Citation.]

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;]  [¶]  [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subds. (a)(1)-(3); see also § 1170.95, subd. (b)(1)(A).)  Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.'  (§ 1170.95, subd. (b)(1)(C).)  If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.'  (§ 1170.95, subd. (b)(2).)

"Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief.  (§ 1170.95, subd. (c).)

8

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' " (*Lewis*, *supra*, __ Cal.5th __ [pp. 6-7].)

B. *Any Error on the Court's Part Was Harmless*

Defendant argues the denial of his petition without briefing and a hearing violated his right to due process.{AOB 18-20} He further asserts the prosecutor misrepresented to the court the basis for the underlying conviction by claiming that this court's prior opinion demonstrated he was the actual killer.{AOB 20-21} The court appears to have erroneously denied defendant's petition based solely upon the prosecutor's representation that the 2003 opinion showed defendant was the actual killer. However, we conclude any error on the court's part was harmless.

The court appointed counsel and summarily denied defendant's petition at a status conference hearing, pursuant to the prosecutor's oral motion to dismiss the petition. The prosecutor stated: "According to the 2003 appellate opinion in imaging, it shows [defendant] is the actual killer in both murders." Defense counsel responded that he looked at the opinion and "[did not] disagree with [the prosecutor] on the facts." The court then denied the petition.

The record before the trial court appears sparse and apparently did not include the 2003 appellate opinion that the prosecutor cited.[4] Thus, there is no indication the court even reviewed the opinion, or any portion of the record of conviction, before denying the petition; rather, it simply relied upon the prosecutor's representation. Furthermore, the prosecutor's assertion that the 2003 opinion showed defendant was the actual killer was in error. The opinion does not clearly show that defendant was the actual killer. Rather, it reflects that he was "prosecuted on the theory that [he] shared the killer's deliberation and premeditation or was guilty on a felony murder theory, . . ." (*People v. Williams*, *supra*, E031301 at p. 6.) The opinion also states that "a felony murder theory was asserted and eventually submitted to the jury." (*Id.* at p. 8.) We further note one of defendant's claims in the 2003 appeal was that there was insufficient evidence to support his conviction for the Anes murder. The opinion discusses possible inferences from the evidence and concludes there was substantial evidence "to support the conclusion that defendant was present in the park and participated in the murder of Anes." (*Id.* at p. 14.)

As the People point out, even if the court erred in summarily denying the petition without ordering briefing and relying on the prosecutor's representation, any error was harmless since "[t]he record of conviction shows that appellant's conviction was based on

---

[4] The clerk's transcript on appeal includes the information, the January 29, 2002 minute order reflecting the jury's verdict, minutes orders from the penalty phase, a copy of the probation report, the abstract of judgment, defendant's petition for resentencing, the notice and minute orders regarding the status conference hearing, the notice and minute orders regarding appointed counsel's conflict of interest, and the minute order from the hearing when the court dismissed the petition.

10

a finding he was an actual killer or a direct aider and abettor and that he acted with express malice." In support of this claim, the People asked us to take judicial notice of the record on appeal in case No. E031301, and they point to the prosecutor's closing argument at trial and instructions given to the jury on aiding and abetting principles, malice aforethought, first degree murder, and second degree murder. The People further assert that the jury was not instructed on the second degree felony murder doctrine or second degree murder under the natural and probable consequences doctrine. They conclude that, in light of the record, defendant "could not establish that he was 'convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine.' " We agree.[5]

Harmless error analysis is appropriate in evaluating errors in post-sentencing proceedings, including those involving erroneous denials of petitions under section 1170.95. (*Lewis*, *supra*, __ Cal.5th __ [pp. 34-37].) The jury here returned a verdict of second degree express or implied malice murder in count 1. As this court pointed out in its prior opinion, "[t]he prosecutor argued, and the jury was instructed that defendant could be found guilty either on a felony-murder theory or on a theory that the killing was deliberate and premeditated. Since the killing of Anes, as alleged in count 1, was found to be second degree murder, the jury must have found the unlawful killing of a human

---

[5] In light of our conclusion, we find it unnecessary to address defendant's claims of prosecutorial misconduct and ineffective assistance of counsel.

11

being with malice aforethought with intent to kill but without sufficient evidence of deliberation and premeditation." (*People v. Williams*, *supra*, E031301 at p. 21.)

Therefore, because the record of conviction demonstrates conclusively that defendant was not convicted of felony murder or murder under a natural and probable consequences theory, but rather second degree murder based upon malice, he is not eligible for relief under section 1170.95. Accordingly, the error in denying his petition based on the prosecutor's representation was harmless.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                                J.

We concur:

RAMIREZ _____
            P. J.

RAPHAEL _____
            J.

12